IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | |
| v. | * | CRIMINAL NO.  1:22-336-SAG |
| | * | |
| ANNA GABRIELIAN and | * | |
| JAME LEE HENRY, | * | |
| | * | |
| Defendants. | | |

..........

### DEFENDANTS' MOTION *IN LIMINE* TO PRECLUDE INFLAMMATORY POLITICAL STATEMENTS

During a recorded meeting with an FBI undercover ("UC") on August 17, 2022, Defendant Jamie Henry made critical and inflammatory statements about Barack Obama, Hillary Clinton, George W. Bush, and Dick Cheney. The potential prejudice from Dr. Henry's remarks substantially outweighs any probative value. The Court should preclude reference to such statements under Federal Rules of Evidence 401, 402, and 403.

### FACTUAL BACKGROUND

The Indictment charges Dr. Gabrielian and her husband Dr. Jamie Henry with giving the UC Individually Identifiable Health Information ("IIHI") to assist the Russian government by demonstrating:

> 1) the level of **GABRIELIAN** and **HENRY's** access to IIHI of U.S. personnel, 2) **GABRIELIAN** and **HENRY's** willingness to provide IIHI to the Russian government, and 3) the potential for the Russian government to gain insights into the medical

> conditions of individuals associated with the U.S. government and military.

Indictment, Count I (Conspiracy), paragraph 8.

Surreptitious government recordings show that before her arrest in September 2022, Dr. Gabrielian was working long hours as an anesthesiologist at Johns Hopkins University Hospital ("JHU") in Baltimore, and was the primary caregiver for her two young sons. She was spending extra hours helping a Ukrainian colleague at JHU who was trying to supply Ukraine with medical assistance, including mobile ultrasounds to improve battlefield treatment, triage, and anesthesia. That colleague was also advocating the use of mobile ultrasounds to improve maternity care in Ukraine.

Dr. Gabrielian had naively attempted to offer the same kind of medical assistance to Russia. On March 1, 2022, Dr. Gabrielian sent innocuous emails from her JHU email account to the Moscow School of Medicine and the Russian embassy. A rough English translation of the Moscow School of Medicine email reads:

> Good afternoon, I'm an obstetric anesthesiologist at Johns Hopkins Institute in Baltimore. I would not want my medical colleagues in Russia to be cut off from the international medical community and am ready to participate in some sort of collaboration with you. I can speak Russian, but not perfectly. Please let me know if you're interested in a joint project.

A rough translation of the Russian embassy email reads:

> Good afternoon. My husband and I are both doctors. I'm an anesthesiologist, he works in [critical care or ICU]. We are ready to help if there is a need. We support life, and do not want to cut Russia off from the international community.

More *than five months later,* on August 17, 20222, the UC approached Dr. Gabrielian in a JHU parking lot as Dr. Gabrielian was walking to work. Before that approach, the Government apparently did not investigate whether the Defendants were planning criminal activity. The UC met with Dr. Gabrielian alone that afternoon. At one point during their conversation, the UC said, "Let's go back once again, like, to your specialty specifically, and could you, well, describe at least a little bit in what area this help could be applied to the current conflict situation that's happening now."

Dr. Gabrielian responded, "As I understand it, the Russian University requires exchange now, that is no one wants to collaborate with them. . . . I can collaborate with them. I mean to restore these bridges . . . " After a digression, the UC asked, "So, restore relations with . . ." Dr. Gabrielian responded, "The medical sphere. . . . Share protocols. I mean whatever we have at Hopkins, you have it too, if you want it." The UC asked "Protocols for what exactly?" Dr. Gabrielian said, "Oh, protocols for different anesthesia. That is, epidural anesthesia for parturients. Everything that we have, you have it, too. . . .  I think my husband could explain and tell you more. Because he has even those clinics . . . as to how set up a hospital for the wounded. I mean what items are needed there . . . . I mean, he has all this information. I mean he is a more important person right now, than me."

Several times, the UC asked for confidential or "special access" information. Dr. Gabrielian tried to explain that she had no access to confidential information, and that if she tried to access the medical record of anyone important, she would be fired:

3

> . . . No, I mean, when I offered, I knew what I was offering. But regarding good information—I really don't have any. What can I do? Yes, if someone is important, I can enter that chart once, for which I can be fined big time. If I publish something with the Russian institute I can still say these are my colleagues, this is international work. . . . So as for this information, we cannot give it to you. If we do give it, then that's it.

The UC met with both Defendants later that evening. The UC met with Dr. Gabrielian alone on August 24. The UC finally met with both Defendants on August 31. Searching for a crime two doctors would actually be in a position to commit, the UC persuaded Defendants to share a few random scraps of medical records related to two JHU patients and five patients treated at Fort Bragg (none active military).

During one of the recorded meetings on August 17, 2022, Dr. Henry explained that he was meeting with the UC because of "hate of war." Dr. Henry then said:

> Dr. Henry: We have an ideology too that is very rigid, black and white – a lot of Islamists are, and Christians as well – it creates a lot of violence, and potential violence. And um, you know the way that I am viewing what is going on right now in Ukraine is that the United States is using Ukrainians as a proxy for their own hatred towards Russia. I think the current administration has hatred toward Russia because Hillary Clinton lost in 2016 and I think Obama was offended by Putin because Obama is an effeminate man and he is intimidated by the values that Putin has just as many Americans are offended by Trump when he presents himself um and I think it is personality driven partly and a lot of people are dying as a result of people's arrogance and personality.
>
> Dr. Gabrielian: A lot more people died than needed to. Because of what we…. Um, America has done is prolong the bloodbath.
>
> Dr. Henry: Not only that, you look at what we have done in Libya for instance. Hillary Clinton is very proud of what she has accomplished in Libya which is basically creating anarchy, there is slave trades going on in Libya now. Talk about oil being wasted. Oil being used to support terrorism. It is insane. And she is proud of it. And it is uh . . .
>
> Dr. Gabrielian: I do think we are on the same page

Dr. Henry: At least George W Bush in his recent speech in Texas he had this Freudian slip – "oh and that too"– you know

UC: yeah, I heard that too

Dr. Henry: It's like he actually feels guilt. I don't think Dick Cheney feels any guilt for what he has done. It is very clear from his daughter when given a chance.

## ARGUMENT

Federal Rule of Evidence 401 defines "relevant evidence" as "evidence having a tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." If the evidence does not help establish the proposition that a defendant committed an offense charged, then the evidence is irrelevant and must be excluded. *United States v. Ewings*, 936 F.2d 903, 905 (7th Cir. 1991); *United States v. Miller*, 549 F. Supp. 2d 1312 (D. Kan. 2008). "Evidence which is not relevant is not admissible." Fed. R. Evid. 402.

There is no logical connection between this exchange and the Government's theory that Defendants provided HIPAA information with the intent to cause malicious harm by helping Russian intelligence. To the contrary, Dr. Henry was expressing disdain for war and conflict. Additionally, Dr. Henry went on to offer legitimate medical assistance, expressing a view that "both sides need a lot of help. So people don't die." Dr. Henry's political diatribe is irrelevant to the Government's case.

Further, Rule 403 gives the Court power to exclude relevant evidence if its "probative value is substantially outweighed by a danger of one or more of the

5

following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." "The prejudice which the rule is designed to prevent is jury emotionalism or irrationality." *United States v. Hernandez*, 975 F.2d 1035, 1041 (4th Cir. 1992) (citing *United States v. Greenwood*, 796 F.2d 49, 53 (4th Cir. 1986)). The Court should exclude evidence when "there is a genuine risk that the emotions of the jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the offered evidence." *Id*. (citing *United States v. Masters*, 622 F.2d 83, 87 (4th Cir. 1980) (quoting Trautman, *Logical or Legal Relevancy-A Conflict in Theory*, 5 Vand.L.Rev. 385, 410 (1951-52)).

While Dr. Henry's political statements have little, if any, probative value, they create a real and unjustified risk of inflaming the jury. Politics is one of the most divisive and polarizing topics in today's discourse. Dr. Henry's use of inflammatory language to insult politicians on both sides of the aisle creates a genuine and unjustifiable risk of jury prejudice.

## CONCLUSION

The Court should preclude the Government from admitting any evidence or testimony related to Dr. Henry's inflammatory statements quoted above.

Respectfully submitted,

SCHERTLER ONORATO MEAD & SEARS, LLP

/s/ *Christopher B. Mead*
Christopher Mead, Bar No. 08661
Noah Cherry, PRO HAC VICE
555 Thirteen Street, NW
Suite 500 West
Washington, DC 20004

Telephone: (202) 628-4199
Facsimile: (202) 628-4177
cmead@schertlerlaw.com
ncherry@schertlerlaw.com

*Counsel for Anna Gabrielian*

/s/ *David Walsh-Little*
DAVID WALSH-LITTLE, #23586
The Law Office of David Walsh-Little, LLC
1014 West 36th Street
Baltimore, Md 21211
Tel: 1.410.205.9337
Fax: 1.667.401.2414
Email: david@walshlittlelaw.com

*Counsel for Jamie Lee Henry*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 21st day of April 2023, a true and correct copy of the foregoing was electronically filed and served on counsel for the United States through ECF.

<u>/s/ Noah Cherry</u>