IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| v. | * | CRIMINAL NO. 1:22-336-SAG |
| **ANNA GABRIELIAN and JAME LEE HENRY,** | * | |
| Defendants. | * | |

DEFENDANTS' MOTION FOR
BILL OF PARTICULARS TO SPECIFY WHAT HARMS
DEFENDANTS ALLEGEDLY INTENDED WHEN THEY TRANSFERRED IHII

The Health Information Portability and Accountability Act ("HIPAA") created a misdemeanor offense for the knowing, unauthorized disclosure of individually identifiable health information ("IHII"). It created a 10-year felony "if the offense is committed with intent to sell, transfer, or use individually identifiable health information for commercial advantage, personal gain, or malicious harm  . . . ." 42 U.S.C. § 1320d-6(a) and (d). Count I of the Indictment charges Drs. Anna Gabrielian and Jamie Henry with conspiring to violate HIPAA for malicious harm. Substantive Counts Two-Three charge Dr. Gabrielian with transferring IHII of two patients for malicious harm. Substantive Counts Four-Eight charge Dr. Henry with transferring IHII of five patients for malicious harm. The statute does not define "malicious harm." Other than tracking the statutory language, the Indictment does not allege, specify, or describe what harms Defendants intended.

Defendants contend that "malicious harm" must mean intended harm to patients, consistent with the primary purpose of HIPAA's non-disclosure provisions—to protect patient

confidentiality.[1] Defense counsel have found no cases explicitly construing "malicious harm" under the statute. Felony HIPAA prosecutions are rare; they have all proceeded on the theory that "malicious harm" means harm to patients.[2]

---

[1] The Department of Health and Human Services ("HHS"), which implements HIPAA's standards for the use and disclosure of individuals' health information, provided guidance indicating that the purpose of the statute's protections against unauthorized disclosure is to protect the privacy of patients. *See* United States Department of Health & Human Resources' Summary of the HIPAA Privacy Rule, available at https://www.hhs.gov/hipaa/for-professionals/privacy/laws-regulations/index.html ("The [Standards for Privacy of Individually Identifiable Health Information which addresses the use and disclosure of individuals' health information] strikes a balance that permits important uses of information, while protecting the privacy of people who seek care and healing.").

Courts frequently recognize that the primary purpose of HIPAA's non-disclosure provisions is to protect patient privacy. *See Wade v. Vabnick-Wener*, 922 F. Supp. 2d 679, 687 (W.D. Tenn. 2010) ("HIPAA embodies Congress' recognition of 'the importance of protecting the privacy of health information in the midst of the rapid evolution of health information systems.'")(*quoting South Carolina Med. Assoc. v. Thompson*, 327 F.3d 346, 348 (4th Cir. 2003)); *Thomas v. 1156729 Ontario Inc.*, 969 F. Supp. 780, 782 (E.D. Mich. 2013) ("The enactment of HIPAA ushered in a 'strong federal policy in favor of protecting the privacy of patient medical records.'")(*quoting Law v. Zuckerman*, 307 F. Supp. 705, 711 (D. Md. 2004)); *Crenshaw v. MONY Life Ins. Co.*, 318 F. Supp. 2d 1015, 1028 (S.D. Cal. 2004) ("HIPAA's stated purpose of protecting a patient's right to the confidentiality of his or her individual medical information is a compelling federal interest.").

[2] *United States. Laulu,* 657 Fed.Appx. 705, slip op. at 5 (9th Cir. No. 15-30152, August 16, 2016)(But for the [prejudicial] introduction of the video, the jury may have believed Laulu's claim she disclosed the victims' medical information to Seugasala as a favor, without the intent to personally gain or cause malicious harm *to the victims*"((emphasis added); *United States v. Dustin James Ortiz*, No. 21-CR-149 (S.D. Iowa) (defendant was charged with felony HIPAA "malicious harm" violation for using his co-defendant's access to VA records to obtain mental health records of a woman who was assisting the mother of the defendant's children; government's theory was that the defendant was motivated to cause malicious harm to the patient and thereby eliminate her as a source of support for the mother); *United States v. Andrea Smith*, No. 07-CR-378 (E.D. Ark.) (defendant was a licensed practical nurse who provided IHII to her husband, who was in litigation with the patient; husband then threatened to use the information against the patient in the legal proceeding and allegedly told the patient to tell the grand jury that he "suffered no harm from the disclosure of [his] private medical information."); *United States v. Liz Arlene Ramirez*, No. 05-CR-708 (S.D. Tex.) (defendant worked for a physician who had a contract to provide medical treatment to FBI agents and agreed to provide the medical records of an FBI agent to an undercover posing as a drug trafficker for $500; government charged both the "personal gain" and "malicious harm" provisions); *United States v. Linda Sue Kalina*, No. 18-CR-175 (W.D. Pa.) (defendant

Defense counsel recently learned that the Government is advocating for a jury instruction that makes no attempt to define "malicious harm," and that the Government objects to Defendants' requested instruction limiting "malicious harm" to the statutory purpose of protecting patients. The Government's limitless interpretation apparently left the grand jury free to imagine that Defendants might have intended any kind of potential harms to anyone, or to any undefined national interests. The Indictment and the Government's unbounded statutory interpretation have defense counsel guessing about what creative Government counsel might argue at trial. The Government's refusal to define "malicious harm" in its proposed instruction would leave individual jurors free to convict based on any of several potential theories of "harm," without unanimous jury agreement on any one theory.

The rule of lenity should bar the Government's overbroad interpretation of this ambiguous statute. *See, e.g., United States v. Hilton*, 701 F.3d 959, 968 (4th Cir. 2013). The Government's unlimited interpretation would also render the statute void for vagueness.[3] The Government's specific allegations of harm(s) are likely to render the statute vague as applied to Defendants. The Government's allegations of harms may also raise issues about grand jury practice and the validity of the Indictment.

The Court may have to resolve these defense arguments at some point in the future. For now, defense counsel need to prepare for a trial due to begin May 22. They need to know what theories of "harm(s)" the Government alleges and intends to prove at trial.

---

revealed IHIII in order to embarrass and harass the underlying patients, some of whom were associated with her former employer).

[3] *See, e.g., City of Chicago v. Morales*, 527 U.S. 41, 56 (1999) ("Vagueness may invalidate a criminal law for either of two independent reasons. First, it may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits; second, it may authorize and even encourage arbitrary and discriminatory enforcement.")

Accordingly, Defendants request that the Government provide the following bill of particulars:

> Separately for each Defendant, and for each Count of the Indictment, please identify all the harm(s) the Defendant "maliciously intended," and how the Defendants understood that transferring the IHII would cause such harm(s). If the Government contends that the Defendant intended harm to the United States, identify all statutes, regulations, executive orders, or any other sources of information defining the interests of the United States Defendants allegedly intended to harm.

## **ARGUMENT**

Rule 7(f) of the Federal Rules of Criminal Procedure authorizes the Court to direct the Government to file a bill of particulars. *See United States v. Anderson*, 481 F.2d 685, 690 (4th Cir. 1973). The Court has discretion in such matters, but there exists "no discretion to disregard the requirements of the Sixth Amendment that the accused shall be informed of the nature and cause of the accusations against him fully enough to enable him to prepare his defense." *Williams v. United States*, 164 F.2d 302, 304 (5th Cir. 1947) (finding reversible error for trial court to refuse the defendant's motion for a bill of particulars).

The purpose of a bill of particulars is "to enable a defendant to obtain sufficient information on the nature of the charge against him so that he may prepare for trial, minimize the danger of surprise at trial, and enable him to plead his acquittal or conviction in bar of another prosecution for the same offense." *United States v. Schembari*, 484 F.2d 931, 934-35 (4th Cir. 1973) (citing *United States v. Dulin*, 410 F.2d 363, 364 (4th Cir. 1969)). A bill of particulars serves to amplify the indictment "by providing missing or additional information so that the defendant can effectively prepare for trial." *United States v. Fletcher*, 74 F.3d 49, 53 (4th Cir. 1996) (citations omitted).

A court may consider "the complexity of the crime charged" when determining what additional information a defendant needs to adequately prepare for trial. Charles Alan Wright, *et al*, 1 *Fed. Prac. & Proc. Crim.* § 130 (4th ed. 2019); *see also United States v. Wharton*, ELH-13-0043, 2014 WL 1430387, at *12 (D. Md. Apr. 10, 2014), *aff'd*, 840 F.3d 163 (4th Cir. 2016) ("Given the complexity and nature of the charges, and the extended period of time involved, I am persuaded to grant the defendants' request for a bill of particulars.").

The conspiracy count charges overt acts referring to statements by the Defendants expressing support for Russia and offering to assist Russia. Perhaps the Government intends to assert that in providing a few random, irrelevant pieces of medical information to the Russian Government, Defendants intended to "harm" the United States in some way. How? What legally defined interest of the United States did Defendants intend to harm? Does the Government really contend that Dr. Henry believed that lists of medications taken by five non-active-duty patients at Fort Bragg could provide useful information about American military readiness to an enemy? How? Does the Government contend that Dr. Gabrielian actually believed that Russia could "exploit" a medical record for the wife of a random U.S. Government employee? How?

Defendants cannot prepare for trial, and have no double jeopardy protection, if the Government does not particularize the harm(s) it alleges.

## **CONCLUSION**

For these reasons, the Court should order the Government to provide the requested Bill of Particulars.

Respectfully submitted,

SCHERTLER ONORATO MEAD & SEARS, LLP

/s/ *Christopher Mead*
Christopher Mead, Bar No. 08661
Noah Cherry, PRO HAC VICE
555 Thirteen Street, NW
Suite 500 West
Washington, DC 20004
Telephone: (202) 628-4199
Facsimile: (202) 628-4177
cmead@schertlerlaw.com
ncherry@schertlerlaw.com

*Counsel for Anna Gabrielian*

/s/ *David Walsh-Little*
DAVID WALSH-LITTLE, #23586
The Law Office of David Walsh-Little, LLC
1014 West 36th Street
Baltimore, Md 21211
Tel: 1.410.205.9337
Fax: 1.667.401.2414
Email: david@walshlittlelaw.com

*Counsel for Jamie Lee Henry*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 25, 2023, I caused the filing of a copy of the foregoing and accompanying Proposed Order on CM/ECF which provides notice to counsel of record.

/s/ *Christopher B. Mead*
Christopher B. Mead, Bar No. 08661