IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO.  SAG-22-336 |
| | * | |
| ANNA GABRIELIAN & | * | |
| JAMIE LEE HENRY, | * | |
| | * | |
| Defendants. | * | |
| | ****** | |

### GOVERNMENT'S ADDITIONAL BRIEFING REGARDING INSTRUCTION NO. 31: "MALICIOUS HARM" AND "PERSONAL GAIN"

The Defendants seek nine pages of confusing instructions for four straightforward words: "malicious harm" and "personal gain." These voluminous instructions will serve only to confuse the jury and muddy the legal issues. The Government's proposed instruction are clear and supported by law, precedent, and Sand & Siffert. They echo those previously used by the only court to carefully consider this statute, the district court in *Laulu*.

### ARGUMENT

The Defendants state they have identified no cases construing "personal gain" or malicious harm" under the 42 U.S.C. §1320d-6. ECF 60, at 1. But both terms are explicitly construed in *United States v. Laulu*, 2015 U.S. Dist. LEXIS 188478 (D. Ala 2015). In that case, the District Court held that "the jury could conclude that information concerning the victims' medical treatment was conveyed to [a third party] for either personal gain, *i.e. favorable relations with* [*the third party*] and/or the deposit of money into her husband's prison account." *Id.* at *6 (emphasis added). In other words, a desire for "favorable relations" (and all the more so reputation gain) constitute "personal gain" under the statute. As for "malicious harm," the *Laulu* Court similarly stated that providing a medical record to a target in order to "frustrate a police investigation," qualified as

malicious harm. *Id*. If providing information to a potential defendant that might be used to frustrate a local police investigation qualifies malicious harm, so too with providing information to a foreign adversary that might be used to frustrate the security of the United States.

In addition, the Defendant's proposed voluminous instructions improperly repeat their anticipated closing arguments. *See, e.g.*, 90-1, at 4 (beginning by instructing what the "defendants' contend). The proposed instructions are also riddled with legal misstatements. For example, the newfound instruction that "you may not convict even if you disagree with Defendants' subjective beliefs about what would constitute harm" fails to recognize that the defendants could have acted with reckless disregard for the harm they were causing. In fact, the Defendants fail to adequately address the fact that Sand & Siffert provides an instruction for malicious damage, which is the one the Government proposes using here. *See*, Sand & Siffert, Modern Federal Jury Criminal Instructions, 30-5, Third Element – Malicious Intent; ECF 59, at 6. The Defendant's merely remarks that the third element is concerned with "malicious intent" rather than "malicious harm." ECF 60, at 15-16. But the Defendant fails to recognize that the relevant instruction is involves a defendant who "maliciously damages" property by using fire. *See* 18 U.S.C. § 844(i). A law punishing those who "maliciously damages" provides an apt reference for instructions for those who act for "for malicious harm" – in other words "maliciously harms" – a victim. Sand does not seek to define "damages" in the relevant instruction, any more than "harm" needs definition here. "harm" is a common word easily grasped by the jury. *See* Sand & Siffert, Modern Fed. Crim Jury Instructions 30-1 through 30-5; *accord Laulu*, 2015 U.S. Dist. LEXIS 188478 at * 6 (noting "malicious purposes as the term is generally understood,"); *United States v. Laulu*, 13-CR-0092 (D. Alaska, 2015), ECF 33, at 28-29 (instructing that the fourth element requires "malicious harm," without further elaboration).

While the Defendants seek to muddy the law via nine pages of jury instructions, the facts in this case are clear: the Defendants proposed voluntarily providing IIHI to the Russian Government. Dr. Gabrielian even discussed accessing the IIHI of the President of the United States.  Dr. Henry bragged to the UC that he had provided medical care to the President's mother.  Dr. Gabrielian discussed how, in the future, she could get on the floor at Johns Hopkins to look up the chart of an "important person," stating that she could walk in an tell the treating physician "listen, why don't you . . . go to the restroom," and then access the "important persons" private medical information so she could provide it to Russia.

The Defendants were clear about why they were providing the IIHI – Dr. Gabrielian even told the UC what information might be most "useful" to Russia. By virtue of their trusted positions as doctors who had access to protected information– Drs. Gabrielian and Henry were a "useful weapon."  And Dr. Gabrielian hand-picked the records she provided, focusing on individuals with links to the intelligence and defense community that she treated.  One was a recent member of the Office of the Secretary of Defense.  The other was a spouse of a current employee in the Office of Naval Intelligence.  And Dr. Gabrielian was clear that these records were just the tip of the iceberg on what she was willing to do for Russia. Gabrielian told the UC that her "offer will be the same tomorrow versus five years from now, versus ten years from now. So this a --count as a long-term investment."  A "long-term investment" in a "weapon" is not someone who is acting only to help Russian doctors learn how to better treat their patients.

In Count One, the Defendants are charged with conspiracy to transfer IIHI.   They can be convicted of such a conspiracy even if no record was ever actually transferred, as long as a step was taken in furtherance of the conspiracy. The Defendant's argument therefore, that the harm must be limited to "some specific information contained in the patient records," ECF 60, at  15,

makes little sense in the context of a conspiracy charge.  Gabrielian and Henry conspired to provide medical records as a means of assistance to Russia – and by their own account, they would have kept right on conspiring for "ten years" if they had not been arrested by the Government relatively early in the conspiracy.  It makes little sense to limit a conspiracy charge to "specific information," in an individual record when the entire point of the conspiracy was to give health records to a foreign government for Russia to use as they saw fit.   A conspirator need not identify the specific information in a particular record, as long as it is an agreement to provide IIHI for malicious harm.

Under the Defendants' theory, if they had transferred the entire medical records of the many Special Forces soldiers stationed at Ft. Bragg to the Russian government, they would not be guilty because they did not intend harm from "specific information contained in the patient records," since they just turned over all the medical records with Russia to do whatever Russia wanted with them.   That is nonsensical.

In addition, the Defendant's appear to concede that the Government's definition of at least part of personal gain as "Personal gain need not be monetary. It can mean an action is done to gain a substantial advantage or to rid oneself of substantial difficulty," is accurate. *See* ECF 60-1, at 1.  If that is indeed the case, it is not clear why an extensive additional discussion, including a rehashing of the Defendant's case, is necessary.  And even under the Defendant's theory, personal gain may be reputational in nature if that reputation leads them to gain a substantial advantage – as the Defendants sought to do here when they tried to get the Russian government to form a long-term relationship that included possible jobs in Russia and tickets for their children to Turkey.

The Defendant's attempt to waive off the definition of "personal gain" under insider trading law because it is "judge-created." ECF 60, at 12.  But insider trading law is highly analogous to the circumstances here: both concern the provision of confidential information to others for

4

personal gain. 10b-5 concerns transferring inside information about a company to outsiders; HIPAA concerns transferring protected information about a person to outsiders.

As for the defendants' argument that "personal gain" must be wholly distinct from "commercial advantage," that is misunderstanding of statutory construction. For example, even under their definitions, a defendant who transferred HIPAA information to another hospital so that hospital could know which patients to approach and was paid for doing so, would clearly be guilty of acting for both personal gain and commercial advantage in the same act. Moreover, the government does not conflate "commercial advantage" is not conflated with "personal gain" as the Defendants contend. "Personal gain" is 'personal.' "commercial advantage" can accrue to third parties alone.

For example, consider a defendant who works at Hospital 1, and has a friend who runs Hospital 2. As an act of friendship – expecting no reward whatsoever or change in their relationship– the defendant provides the medical records of patients at Hospital 1 who are in need of expensive (and profitable) procedures. Hospital 2 uses that list to approach the patients and see if they want to receive the procedures at Hospital 2. The Defendant in that situation has acted for "commercial gain" of Hospital 1, and he has not sought to "gain a substantial advantage or to rid oneself of substantial difficulty" for himself. In other words, "commercial gain" is not necessarily "personal."

## CONCLUSION

The Court should instruct the jury consistent with the instructions proposed by the government.

        Respectfully submitted,

        Erek L. Barron
        United States Attorney


By:    _____/s/_____

        Aaron S.J. Zelinsky
        P. Michael Cunningham
        Assistant United States Attorneys

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this day, a copy of the foregoing motion was electronically filed via CM/ECF which provides notice to counsel of record.

_____/s/_____
Aaron S.J. Zelinsky
Assistant United States Attorney